UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 24 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LOS ANGELES HOMELESS SERVICES AUTHORITY, a joint powers authority,

Plaintiff - Appellee,

LOS ANGELES CONTINUUM OF CARE,

Intervenor-Plaintiff - Appellee,

v.

DONALD J. TRUMP, in his official capacity as President of the United States of America; et al.,

Defendants - Appellants.

No. 26-5367

D.C. No.
2:26-cv-07056-DOC-AJR
Central District of California,
Los Angeles

ORDER

Before: NGUYEN, R. NELSON, and DESAI, Circuit Judges.

U.S. Department of Housing and Urban Development, et al. ("HUD"), seek a stay pending appeal of an order granting a preliminary injunction to Los Angeles Homeless Services Authority ("LAHSA") and Los Angeles Continuum of Care ("LA CoC"). Dkt. No. 8. We grant in part and deny in part HUD's motion.[1]

//

//

[1] We hereby lift the administrative stay issued on September 10, 2026. *See* Dkt. No. 14.

## I. Standard of Review

"A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted). Rather, it is "'an exercise of judicial discretion,' and 'the propriety of its issue is dependent upon the circumstances of the particular case.'" *Id.* at 433 (citation omitted).

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion," and our analysis is guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426. "'The first two factors . . . are the most critical,' and the 'mere possibility' of success or irreparable injury is insufficient to satisfy them." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026). We analyze the final two factors only when the movant "satisfies the first two." *Nken*, 556 U.S. at 435.

We review a district court's grant of a preliminary injunction for abuse of discretion. *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 491 (9th Cir. 2023). We find abuse of discretion "if the district court based its decision on an erroneous legal standard or clearly erroneous finding of fact." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citations omitted).

## I. Discussion

The facts of this case are known to the parties. We therefore include only those facts necessary to the disposition of the present motion. Because the facts are rapidly evolving, our decision is intended to maintain the status quo and avoid undue disruption of the FY2026 application process.

### a. Likelihood of Success on the Merits

HUD has not made a sufficiently strong showing that it is likely to succeed on the merits, except as discussed below. When HUD suspended LAHSA on June 11, 2026, it relied on 2 C.F.R. § 180.700, a regulation that permits federal agencies to suspend federal contractors in specific circumstances. Under this regulation, an agency "may impose suspension only when that [agency] determines that . . . [t]here exists adequate evidence to suspect any other cause for debarment . . . and [i]mmediate action is necessary to protect the public interest." 2 C.F.R. § 180.700.

The district court focused on HUD's unsatisfactory explanation for the necessity of an "immediate suspension." We take the same approach and only

address whether HUD provided "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations omitted). We similarly conclude that HUD has not provided a satisfactory explanation.

HUD cites numerous pieces of evidence of LAHSA's ongoing mismanagement and fraud to justify its immediate suspension.[2] Despite HUD's knowledge of LAHSA's mismanagement for many years, HUD chose to suspend LAHSA at a time when it would leave the Los Angeles region particularly vulnerable: after the deadline for Collaborative Applicants to register for the FY2026 application cycle, after HUD had approved LAHSA to be the Collaborative Applicant for the FY2026 application cycle, and after HUD had given LAHSA funds to complete the consolidated application. HUD points to two audits released in May 2026 that confirmed LAHSA's ongoing alleged

[2] HUD also effectively prevented LA CoC from identifying a suitable alternative Collaborative Applicant. On June 18, 2026, HUD notified LA CoC of LAHSA's suspension and concluded that LA CoC was in violation of its obligations as a result, and proposed implementing its "Direct-to-HUD" remedial measure. LA CoC responded to HUD in writing within 30 days, *see* 24 CFR § 578.13, urging HUD to permit LA CoC to designate an alternate Collaborative Applicant. HUD never responded to LA CoC's letter and proceeded with the "Direct-to-HUD" application process. Counsel for LA CoC represented that the first time HUD stated it would consider an alternate Collaborative Applicant was in its reply brief on the present motion.

misconduct. However, this does not provide any additional clarity on why it was necessary to suspend LAHSA during an ongoing application cycle. Accordingly, HUD has not provided a "satisfactory explanation for its action[,] including a rational connection between" its knowledge of the allegations and its decision to suspend LAHSA at a time that severely crippled LA CoC from applying for federal funding. *State Farm*, 463 U.S. at 43.

We agree that HUD, as a steward of federal taxpayer funds, has the ability and duty to address the serious allegations of fraud and mismanagement levied against LAHSA. We similarly are not aware of any law precluding the government from acting on prior known information. Rather, HUD's "explanation for its decision" to suspend LAHSA during the FY2026 application cycle, after approving LAHSA as LA CoC's Collaborative Applicant, and while knowing of LAHSA's alleged misconduct for years "runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43.

The practical effect of the timing of LAHSA's suspension was to prevent LA CoC from applying for federal homelessness funding. Because of HUD's chosen timing, LA CoC did not have a Collaborative Applicant and the deadline to identify a substitute Collaborative Applicant had lapsed. Although HUD intended to implement a "Direct-to-HUD" application system allowing individual service providers in the LA CoC to apply to HUD in the absence of a Collaborative

Applicant, it is likely that its plan is unworkable and, at this late stage, extremely difficult if not virtually impossible to implement. Applications for the FY2026 application cycle are due on October 14, 2026, leaving individual entities, who have relied on LAHSA for years to complete their applications on their behalf, a matter of days to navigate the grant application process. The unworkability of this solution is underscored by HUD's representation at oral argument that it only recently opened the application portal and has not yet received any individual applications from any individual LA CoC entities.

At the end of the day, the parties are faced with a quickly shrinking runway. LA CoC, LAHSA, and the individual service providers (or some combination thereof) must submit applications by October 14. HUD must review and announce award decisions by December 1. Because there is not "sufficient time to reasonably implement" an alternative system, the status quo will be best preserved at this late stage by permitting LAHSA to serve as the Collaborative Applicant for the FY2026 application cycle. *United States Postal Service v. California*, 609 U.S. __ (2026) (Kavanaugh, J., concurring).

**b. Irreparable Harm**

HUD has also not sufficiently established that it will be irreparably harmed absent a stay. HUD claims that requiring it to continue working with LAHSA for the FY2026 competition would damage the program's reputation beyond repair,

allow LAHSA continued access to millions of dollars in federal taxpayer funds despite its history of mismanagement, and require HUD to rely on LAHSA's determination of regional priorities for Tier One and Tier Two funding. HUD further states that it will suffer irreparable harm absent a stay because it faces a statutory deadline of December 1, 2026.

While we recognize that HUD could experience some reputational harm by continuing to work with LAHSA, any such harm is speculative at this stage and thus not sufficient to warrant a stay. *See Nken*, 556 U.S. at 434–35 ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor." (citation modified)). This is particularly apparent given that HUD agreed to work with LAHSA as late as April of this year, while knowing of the same allegations of fraud and mismanagement it later used to justify LAHSA's immediate suspension in June. Moreover, any harm resulting from the condensed amount of time HUD has to review applications is a direct result if its decision to suspend LAHSA while the FY2026 application cycle was ongoing. "That the government's asserted harm is largely self-inflicted 'seriously undermines' its claim for equitable relief." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (quoting *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993)).

Conversely, the harm to LAHSA and LA CoC is imminent and impacts "vulnerable populations, critical programs, and ongoing services." *County of King*

*v. Turner*, --- F.4th --- , 2026 WL 2489361, at *14 (9th Cir. 2026). Granting a stay would prevent LA CoC from submitting a collaborative application for the FY2026 application cycle. Thus, each individual LA CoC service provider would have to draft and submit individual applications by October 14. As described above, that is virtually impossible.

### c. Remaining Factors

Because we find that HUD has not satisfied the first two *Nken* factors, we do not analyze the final two factors. *Nken*, 556 U.S. at 434.

## II. CONCLUSION

The motion to stay is denied as to the district court's order to reinstate LAHSA as the Collaborative Applicant, Homeless Management Information Systems ("HMIS") Lead, Coordinated Entry System ("CES") Coordinator, and Point-in-Time ("PIT") Count Administrator.

The motion is further denied as to the order requiring HUD to respond to LA CoC's evaluation of the applicant pool for Collaborative Applicant, HMIS Lead, CES Coordinator, and PIT Count Administrator for FY2027.

The motion to stay is denied as to the order to execute signed agreements for approved grants to LA CoC for FY2025, to the extent that HUD has not executed the FY2025 awards solely because LAHSA is involved. HUD is ordered to

countersign the FY2025 agreements and release those funds according to the standard schedule required by law irrespective of LAHSA's involvement.

The motion to stay is granted as to the district court's order to disburse the approximately $239 million earmarked for LA for FY 2026, only to the extent that order could be construed as requiring immediate disbursal of those funds before they would otherwise be due. HUD is directed to proceed with the FY2026 competition in accordance with the 2026 Appropriations Act.

The motion to stay is denied as to all other portions of the district court's order.

The panel will hold oral argument on the appeal of the preliminary injunction on October 19, 2026 at 10:00 a.m. PST at the Richard H. Chambers Courthouse in Pasadena, California.

R. Nelson, J., dissenting, opinion to follow.